IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID ALLEN BUTLER,)
)
        Plaintiff,)
)
v.)
) Civil Action No. 14-573
CAROLYN W. COLVIN,)
ACTING COMMISSIONER OF)
SOCIAL SECURITY,)
)
        Defendant.)

OPINION

AND NOW, this 29th day of September, 2015, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, granted, and the Acting Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, denied. Pursuant to sentence 4 of 42 U.S.C. §405(g), the case will be remanded to the Acting Commissioner for further proceedings consistent with this Opinion.

When the Acting Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and . . . the [Commissioner's] responsibility to rebut it [should] be strictly construed . . . .'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). These well-established principles dictate that the court remand this case to the Acting Commissioner for further proceedings at step 3 of the sequential evaluation process.

Plaintiff filed his applications for DIB and SSI on February 1, 2012, alleging disability beginning on January 1, 2011, due to depression, anxiety, high blood pressure and learning difficulty. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing on November 20, 2012, at which plaintiff appeared and testified while represented by counsel. On December 7, 2012, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on February 28, 2014, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff, who has a high school education, was 43 years old on his alleged onset date of disability and is classified as a younger individual under the regulations. 20 C.F.R. §§404.1563(c), 416.963(c). Plaintiff has past relevant work experience as a construction laborer and electrician's helper, but he has not engaged in substantial gainful activity at any time since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a

vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. Although the medical evidence established that plaintiff suffers from the severe impairments of hypertension, gastroesophageal reflux disease, major depressive disorder/dysthymic disorder/mood disorder, generalized anxiety disorder/panic disorder/post traumatic stress disorder, intermittent explosive disorder/explosive personality disorder, borderline intellectual functioning and schizoaffective disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform medium work with a number of additional non-exertional limitations. Plaintiff is limited to performing one to two step tasks that are simple, routine and repetitive and involve only simple work-related decisions and few, if any, work place changes. In addition, plaintiff is restricted to only occasional interaction with the public and co-workers (with no tandem tasks) and only occasional supervision (collectively, the "RFC Finding").

Based upon testimony by a vocational expert, the ALJ concluded that plaintiff's vocational factors and residual functional capacity do not permit him to perform his past relevant work. However, the ALJ found that plaintiff is capable of performing other work that exists in significant numbers in the national economy, such as a dishwasher, grounds worker and stock clerk. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot,

considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Regulations specify a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity.[1] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff challenges the ALJ's findings at steps 3 and 5 of the sequential evaluation process. Plaintiff argues that the ALJ erred at step 3 by finding that he does not meet listing 12.05C for mental retardation. Plaintiff also argues that the ALJ's step 5 finding is not supported by substantial evidence because the ALJ did not properly weigh certain medical opinions and the RFC Finding and hypothetical question to the vocational expert did not account for all of plaintiff's claimed limitations. Although plaintiff's step 5 argument is without merit, we conclude that the ALJ's step 3 analysis is incomplete for the reasons explained below.

Plaintiff first challenges the ALJ's findings at step 3 of the sequential evaluation process. At step 3, the ALJ must determine whether the claimant's impairment meets or equals one of the listed impairments. Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir.

---

[1] Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(4), 416.945(a)(4).

2000). The listings describe impairments that prevent an individual, regardless of age, education or work experience, from performing any gainful activity. 20 C.F.R. §§404.1525(a), 416.925(a); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000).

Plaintiff claims that the ALJ erred by finding that he does not meet listing 12.05C for mental retardation, now referred to as intellectual disability.[2] That listing provides, in relevant part, as follows:

> 12.05. Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.05, 12.05(C).

The United States Court of Appeals for the Third Circuit has held that in order to meet the requirements of §12.05C, a claimant "must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22)." Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003); see also Illig v. Commissioner of Soc. Sec., 570 Fed. Appx. 262, 265 (3d Cir. 2014).

---

[2] Although listing 12.05 was revised in 2013 and now refers to "intellectual disability" rather than "mental retardation," the substance of the listing has not changed. See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013).

Here, the ALJ found that plaintiff did not meet listing 12.05C because plaintiff did not establish that he suffered from deficits in adaptive functioning prior to age 22. (R. 17). The ALJ based this finding on the following: although plaintiff claims he was in special education classes, he graduated from high school with a rank of 120 out of 185 students; there was no information regarding the services plaintiff received when he was in school or whether any intelligence testing was performed; plaintiff suffered a number of head injuries because of his involvement in fist fights and sports; he used drugs and alcohol during his teenage years; and he obtained employment following high school. (R. 16-17). Because the ALJ concluded that plaintiff did not meet the threshold criterion of listing 12.05C, he did not analyze whether plaintiff met the other requirements of that listing.

As an initial matter, the ALJ's analysis of whether plaintiff's condition satisfies the requirements of listing 12.05C is incomplete because the court cannot meaningfully determine the ALJ's basis for concluding that plaintiff did not suffer from deficits in adaptive functioning prior to age 22. See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (requiring the ALJ to sufficiently explain his findings to permit meaningful review).

As explained in Logan v. Astrue, 2008 WL 4279820 (W.D. Pa. Sept. 16, 2008), the Regulations do not define "deficits in adaptive functioning", nor do they identify guidelines by which to assess the existence or severity of a claimant's alleged deficits. Id. at *8. Likewise, there is no Third Circuit case that addresses this issue. Id. However, the Social Security Administration ("SSA") issued a regulation entitled Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01 (April 24, 2002), which provides guidance on the matter. The SSA recognized that each of the four leading professional mental health organizations defines intellectual disability, or adaptive functioning, in a slightly different manner. Logan, 2008 WL

4279820, at *8. The SSA clarified that it did not seek to endorse the methodology of one professional organization over another, and would allow use of any of the measurement methods endorsed by one of the professional organizations. Id. According to the SSA, to assess a claimant's alleged intellectual disability to determine if deficits in adaptive functioning exist, an ALJ should consult either the American Psychiatric Association's DSM-V, the standard set forth by the American Association on Intellectual and Developmental Disabilities or the criteria of the other major mental health organizations. Id.

In this case, it is not clear from the ALJ's decision which standard or criteria, if any, he used to assess whether plaintiff had deficits in adaptive functioning prior to age 22. The ALJ noted that plaintiff suffered a number of head injuries and he used drugs and alcohol during his teenage years, which could have contributed to his learning difficulty, yet he graduated from high school and subsequently obtained employment. (R. 16, 17). However, absent from the ALJ's discussion is any explanation of the standard or criteria he employed in determining that plaintiff did not have deficits in adaptive functioning. Accordingly, remand is required so the ALJ can explain what standard or criteria he used in evaluating whether plaintiff suffered from deficits in adaptive functioning and complete his analysis. See Dignall v. Colvin, 2015 WL 853679, at *5 (W.D Pa. Feb. 26, 2015) (finding remand necessary where ALJ failed to sufficiently identify any standard or factors he considered in determining whether the plaintiff had deficits in adaptive functioning); Thomas v. Colvin, 2014 WL 584048, at *10 (W.D. Pa. Feb. 14, 2014) (finding remand appropriate where ALJ failed to explain the standard he utilized in concluding that the plaintiff did not have deficits in adaptive functioning); Grunden v. Astrue, 2011 WL 4565502, at *5 (W.D. Pa. Sept. 29, 2011) (finding remand required where ALJ failed to indicate the standard he used to evaluate whether the plaintiff had deficits in adaptive functioning).

If the ALJ determines that plaintiff suffered from deficits in adaptive functioning prior to age 22, he must continue to evaluate whether the other requirements of listing 12.05C are met. The ALJ did not specifically address in his decision whether plaintiff's IQ scores satisfy the requirement of a valid verbal, performance, or full scale IQ of 60 through 70.[3] In this case, plaintiff achieved the following results on the Weschler Adult Intelligence Scale - IV ("WAIS- IV") testing administered by consultative psychological examiner Dr. Julie Uran: Verbal Comprehension Index of 80; Perceptual Reasoning Index of 82; Working Memory Index of 71; Processing Speed Index of 65; and Full Scale IQ of 71. (R. 309). Plaintiff argues that his Processing Speed Index score of 65 satisfies listing 12.05C because it falls in the 60 to 70 range. The ALJ acknowledged that the WAIS-IV includes modifications in the terminology used in scoring,[4] but did not make a specific finding whether plaintiff's Processing Speed Index score of 65 satisfies the IQ score requirement set forth in listing 12.05C. (R. 13, 17). As stated, this issue must be addressed on remand if the ALJ finds deficits in adaptive functioning were present.[5]

---

[3] To satisfy the requirement of listing 12.05C that the claimant must have a valid verbal, performance or full scale IQ of 60 through 70, the Regulations only require that one of those IQ scores be in the 60 through 70 range. See §12.00D.6.c. (". . . where verbal, performance, and full scale IQs are provided in the Weschler series, we use the lowest of these in conjunction with 12.05"); see also Markle, 324 F.3d at 186 (recognizing that the lowest of these three IQ scores is to be utilized in making a determination under §12.05C).

[4] The WAIS-IV, which was released in 2008, is composed of 10 core subtests and five supplemental subtests, with the 10 core subtests comprising the Full Scale IQ. With the WAIS-IV, the verbal and performance subscales from previous versions were removed and replaced by the following index scores: Verbal Comprehension Index; Perceptual Reasoning Index; Working Memory Index; and Processing Speed Index.

[5] The ALJ did not address whether plaintiff has a physical or other mental impairment imposing an additional and significant work-related limitation of function as required by listing 12.05C. However, the Third Circuit has held that the finding of a severe impairment establishes that the claimant has a physical or other mental impairment imposing an additional and significant work-related limitation of function under listing 12.05C. See Markle, 324 F.3d at 188. Therefore, the ALJ's finding in this case that plaintiff has numerous severe physical and mental impairments, which caused functional limitations that were accounted for in the RFC Finding, (R. 13, 17), satisfies the requirement of a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Thus, because the ALJ did not fully address whether the requirements of listing 12.05C were met, the case will be remanded so that the ALJ may complete his analysis.

Plaintiff next argues that the ALJ's step 5 finding is not supported by substantial evidence.[6] According to plaintiff, the ALJ did not properly weigh certain medical opinions and the RFC Finding and hypothetical question to the vocational expert did not account for all of his claimed limitations.

Plaintiff first asserts that the ALJ did not properly weigh the opinions issued by his treating psychiatrist, Dr. Patricia Jarrett, and Dr. Robert Eisler, a psychiatrist who evaluated him one time at his counsel's suggestion. Contrary to plaintiff's position, the ALJ correctly determined that each of their opinions was entitled to little weight. (R. 28).

Dr. Jarrett stated on an employability assessment form for the Pennsylvania Department of Public Welfare that plaintiff was temporarily disabled for less than twelve months. (R. 363). Whether plaintiff was considered to be disabled for purposes of receiving state welfare benefits is irrelevant because another agency's determination regarding disability is not binding on the Acting Commissioner. See 20 C.F.R. §§404.1504, 416.904. As the ALJ correctly observed, Dr. Jarrett's conclusory opinion of temporary disability on the state welfare form was unsupported and unexplained and it conflicted with subsequent treatment records. (R. 28).

The ALJ also properly evaluated and weighed Dr. Eisler's opinion. After examining plaintiff only once, Dr. Eisler concluded that he had marked or extreme mental limitations, which would preclude full time work. (R. 369, 370-71). As the ALJ explained in detail, Dr. Eisler's opinion was based on representations by plaintiff that the ALJ determined were not entirely credible

---

[6] At step 5, the Acting Commissioner must show that there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with his age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(g)(1), 416.920(g)(1).

- 9 -

and it was inconsistent with the record as a whole. (R. 23-27). After reviewing the record, we conclude that the ALJ correctly granted little weight to Dr. Eisler's opinion. (R. 28).

Plaintiff's final argument - that the RFC Finding and hypothetical question to the vocational expert did not account for all of his claimed limitations - also is without merit. The ALJ's RFC Finding accommodated all of plaintiff's mental functional limitations supported by the evidence, as did the hypothetical question, which included all of the factors that were incorporated in the RFC Finding. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (recognizing that an ALJ's hypothetical to a vocational expert must reflect all of the claimant's impairments and limitations supported by the medical evidence). The additional limitations which plaintiff claims should have been incorporated in the RFC Finding and hypothetical are either based on plaintiff's own subjective complaints, which the ALJ properly found were not entirely credible, or based upon Dr. Eisler's opinion, which the ALJ correctly decided was entitled to little weight. Thus, the RFC Finding was supported by substantial evidence and the ALJ appropriately relied upon the hypothetical question posed to the vocational expert.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Acting Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Acting Commissioner for further proceedings consistent with this Opinion.

*/s/ Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Christine M. Nebel, Esq.
220 South Main Street
Suite D
Butler, PA 16001

Paul Kovac
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219